```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
DENNIS CONTI,                                     :
                              Plaintiff,          :
v.                                                :          **OPINION AND ORDER**
                                                  :
DR. G. ZAMILUS and DR. JOSEPH                     :          16 CV 7741 (VB)
AVANZATO,                                         :
                              Defendants.         :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiff Dennis Conti, proceeding pro se and in forma pauperis, brings this action against defendants Dr. Gaetan Zamilus[1] and Dr. Joseph Avanzato under 42 U.S.C. § 1983, alleging they provided him constitutionally inadequate medical care.

Before the Court is defendants' motion for summary judgment. (Doc. #44).

For the reasons set forth below, defendants' motion is GRANTED.

The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

Defendants have submitted a memorandum of law, a statement of facts pursuant to Local Civil Rule 56.1, declarations, and supporting exhibits, which reflect the following factual background.[2]

---

[1] Sued herein as Dr. G. Zamilus.

[2] On October 19, 2018, the Court deemed the motion fully submitted and unopposed. (Doc. #54). Because plaintiff has not submitted a statement of facts pursuant to Local Civil Rule 56.1, the material facts set forth in defendants' Local Rule 56.1 statement, when supported by the summary judgment record, are deemed admitted for purposes of this motion. See Local Civil Rule 56.1(c).

1

I.     Plaintiff's Medical Treatment

At all relevant times, plaintiff, a former heroin addict, was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and incarcerated at Fishkill Correctional Facility ("Fishkill"); Dr. Zamilus worked as a DOCCS physician at Fishkill; and Dr. Avanzato was Fishkill's Facility Health Services Director.

Plaintiff suffers from high blood pressure and cervical radiculopathy, a degenerative spinal condition that causes him chronic discomfort and pain. Starting in December 2009, he continuously took MS Contin at varying dosages to manage his symptoms.

MS Contin is an addictive opioid usually prescribed for severe chronic pain. Patients taking an opioid can develop increasing tolerance to it over time, causing them to require higher dosages to achieve the same effect and thereby increasing the risk of a life-threatening overdose.

DOCCS assigns each inmate at Fishkill a primary care provider who conducts physical examinations, completes written health records documenting treatment, assesses the inmate's medication requests, and dispenses or prescribes medicine as appropriate.

In February 2016, Dr. Zamilus became plaintiff's primary care provider. Plaintiff was taking 105 milligrams of MS Contin daily at that time—a high dosage typically prescribed for patients with cancer or a debilitating illness.

On February 23, 2016, plaintiff had his first appointment with Dr. Zamilus, to address acute elevated blood pressure. Dr. Zamilus adjusted plaintiff's blood pressure medication.

On February 28, 2016, a nurse noted plaintiff's MS Contin prescription would expire on March 3, 2016, and sent plaintiff's chart to Dr. Zamilus to evaluate a prescription renewal at a daily dosage of 105 milligrams.

Dr. Zamilus reviewed plaintiff's medical chart and concluded it did not support such a high dosage. Dr. Zamilus believed plaintiff had developed a dependency on MS Contin, potentially endangering plaintiff's life.

On March 3, 2016, plaintiff met with Dr. Zamilus at the clinic and reported severe cramping caused by plaintiff's blood pressure medication. Thereafter, having not personally evaluated plaintiff, and concerned plaintiff's MS Contin dosage could be too high, Dr. Zamilus issued a five-day prescription for MS Contin at 90 milligrams daily, comprised of two 45-milligram administrations. Shorter prescription intervals caused Dr. Zamilus to review plaintiff's medical file more often, enabling him to more closely monitor plaintiff's condition.

On March 17, 2016, plaintiff went to Fishkill's medical clinic and complained his MS Contin dosage was being reduced too quickly. Dr. Zamilus nonetheless reduced plaintiff's MS Contin dosage, from 90 to 60 milligrams daily, for a two-week period.

On March 30, 2016, a nurse asked Dr. Zamilus to evaluate whether to again renew plaintiff's MS Contin prescription. Dr. Zamilus renewed the 60-milligram prescription for ten days. Dr. Zamilus saw plaintiff at the clinic five days later and continued him on MS Contin at 60 milligrams daily.

On April 7, 2016, Dr. Zamilus renewed plaintiff's 60-milligram prescription for fifteen days.

On April 11, 2016, Dr. Zamilus saw plaintiff at the clinic for elevated blood pressure. Suspecting plaintiff's blood pressure rise might be attributable to plaintiff's "agitation" about his reduced MS Contin dosage, Dr. Zamilus increased plaintiff's daily MS Contin dosage from 60 to 90 milligrams. (Doc. #47-4 ¶ 12).

Plaintiff continued taking 90 milligrams of MS Contin daily until Dr. Zamilus reduced plaintiff's dosage back to 60 milligrams on July 18, 2016.

On July 29, 2016, Dr. Zamilus referred plaintiff to a pain management specialist for the purpose of evaluating possible non-opioid alternatives to MS Contin.

Plaintiff saw the pain management specialist on August 12, 2016. The specialist recommended an electromyography ("EMG") for plaintiff's spinal symptoms and also recommended that plaintiff continue taking 60 milligrams of MS Contin daily while trialing Lyrica, a non-opioid medication prescribed for chronic pain. Four days later, as recommended by the pain management specialist, Dr. Zamilus referred plaintiff for an EMG. Later that week, Dr. Zamilus referred plaintiff to the pain management specialist for a follow-up appointment.

On August 22, 2016, Dr. Zamilus prescribed Lyrica at 25 milligrams daily.

While portions of plaintiff's medical records are illegible, it appears he continued taking 60 milligrams of MS Contin daily and 25 milligrams of Lyrica daily through October 4, 2016.

At his deposition, plaintiff testified he could function on 90 daily milligrams of MS Contin, but that lower dosages caused blood pressure increase, anxiety, stiffness, spasms, bruising, nerve damage, and extreme pain that limited plaintiff's daily activity and interfered with his work in the prison mess hall. He also stated Dr. Zamilus examined plaintiff only once, to perform a routine biennial examination, and testified he did not receive Lyrica until he was transferred from Dr. Zamilus to another primary care provider. Plaintiff further testified his new primary care provider discontinued plaintiff's MS Contin and Lyrica in August 2017.

II.     Plaintiff's Prison Grievances

Plaintiff filed three prison grievances against Dr. Zamilus concerning his administration of MS Contin. Two accused Dr. Zamilus of improperly reducing plaintiff's dosage. The third accused Dr. Zamilus of failing to renew plaintiff's prescription.

Plaintiff's grievance submissions express the following concerns: Dr. Zamilus first decreased plaintiff's MS Contin dosage without having seen him; told plaintiff the government was cracking down on opioid abuse, and Dr. Zamilus would not jeopardize his medical license by continuing plaintiff on a 105-milligram MS Contin dosage; told plaintiff only cancer patients take morphine; disagreed with plaintiff that he has "severe" stenosis; and never reviewed prior healthcare providers' treatment plans or asked plaintiff about his pain. (See Doc. #47-3 at 44 (summarizing plaintiff's complaints)).[3] Plaintiff also alleged a nurse said Dr. Zamilus did not believe in opioids and would take plaintiff off MS Contin. (Id. at 51).

Dr. Avanzato investigated plaintiff's grievances alleging improper dosage reductions. He did not interview plaintiff as part of the investigation, because an interview was not required and Dr. Avanzato felt an interview was unnecessary. After interviewing and obtaining a written response from Dr. Zamilus and researching published guidance on opioid usage to manage chronic pain, Dr. Avanzato concluded Dr. Zamilus managed plaintiff's medication in accordance with Dr. Zamilus's professional responsibilities. DOCCS's Deputy Superintendent of Health Services, identified in the record as A. Maume, likewise concluded Dr. Zamilus acted appropriately.

Plaintiff's grievances were denied.

---

[3]     Citations to plaintiff's grievances reflect page numbers assigned by ECF.

5

III.     Opioid Management, Use, and Abuse

Many patients prescribed opioids suffer serious addiction and overdose-related death. MS Contin's manufacturer's medication guide warns MS Contin "can put you at risk for overdose and death." (Doc. #47-2). Inmates with a history of substance abuse are particularly susceptible.

The Centers for Disease Control recommend healthcare providers prescribe opioids at the lowest effective dose. According to a sworn declaration of DOCCS Regional Medical Director David Dinello, M.D., the National Institute of Health and New York State Department of Health recommend that providers treat pain using non-addictive alternatives to opioids and prescribe narcotics or medications with abuse potential for no more than seven days. (Doc. #47-5 ¶ 6).

After plaintiff filed this lawsuit, DOCCS implemented a statewide initiative to significantly reduce inmates' prescriptions for medications with abuse potential—a category to which MS Contin belongs. Pursuant to DOCCS's Medications with Abuse Potential Policy, effective June 1, 2017, each such prescription requires a DOCCS Regional Medical Director's approval.

**DISCUSSION**

I.     Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot

preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citation omitted).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."  Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010) (quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986)).  It is the moving party's burden to establish the absence of any genuine issue of material fact.  Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party fails to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. at 322–23.  If the non-moving party submits "merely colorable" evidence, summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."  Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted).  The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury reasonably could find for him.  Dawson v. Cty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 252).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a

reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper. Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court may consider only evidence that would be admissible at trial. Nora Bevs., Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998) (citation omitted).

II.     Application

Defendants argue the undisputed facts demonstrate defendants afforded plaintiff constitutionally adequate medical care.

The Court agrees.

The Eighth Amendment affords plaintiff the constitutional right to adequate medical care while imprisoned. See Estelle v. Gamble, 429 U.S. 97, 103–04 (1976). To prevail on an Eighth Amendment claim for inadequate medical care, plaintiff must show an "act[] or omission[] sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. This test has both an objective and a subjective component: plaintiff must show (i) a "sufficiently serious" deprivation of medical care, and (ii) that the officials in question acted with a "sufficiently culpable state of mind." Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006) (citation omitted).

The objective component has two subparts. First, plaintiff must show he "was actually deprived of adequate medical care," keeping in mind that only "reasonable care" is required. Salahuddin v. Goord, 467 F.3d at 279 (citing Farmer v. Brennan, 511 U.S. 825, 839–40 (1970)). "Second, the objective test asks whether the inadequacy in medical care is sufficiently serious," by examining "how the offending conduct is inadequate and what harm, if any, the inadequacy

has caused or will likely cause the prisoner." Id. at 280 (citing Helling v. McKinney, 509 U.S. 25, 32–33 (1993)).

To satisfy the subjective component, plaintiff must show defendants were aware of his serious medical needs and consciously disregarded a substantial risk of serious harm. Salahuddin v. Goord, 467 F.3d at 280. "[N]egligence, even if it constitutes medical malpractice, does not, without more," amount to deliberate indifference giving rise to an Eighth Amendment claim. Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998). Likewise, "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Id. (citation omitted). When the plaintiff has not alleged "an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm,'" id. (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996)), proper diagnosis and treatment "implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment," Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) (citing Estelle v. Gamble, 429 U.S. at 107).

Here, based on the undisputed facts, no reasonable juror could conclude plaintiff has satisfied either the objective or the subjective component of an Eighth Amendment claim.

The record shows defendants provided plaintiff reasonable medical care. From February to October 2016, Dr. Zamilus repeatedly met with plaintiff, adjusted plaintiff's MS Contin dosage, referred plaintiff to other providers, and renewed plaintiff's MS Contin prescriptions. Dr. Zamilus first considered lowering plaintiff's MS Contin dosage based on Dr. Zamilus's concern that plaintiff's dosage was too high. Plaintiff's history of heroin abuse and the potential use of a non-opioid alternative to treat plaintiff's pain also informed Dr. Zamilus's treatment.

9

Moreover, Dr. Avanzato and DOCCS's Deputy Superintendent of Health Services both assessed Dr. Zamilus's care of plaintiff and determined Dr. Zamilus's decisions to reduce plaintiff's MS Contin dosage and issue shorter prescriptions were medically appropriate.

These actions were all reasonable; the Eighth Amendment does not require defendants to have done more.

The uncontested facts also establish neither defendant acted with a "sufficiently culpable state of mind." Salahuddin v. Goord, 467 F.3d at 280. Assuming as true plaintiff's allegations concerning Dr. Zamilus's conduct, his statements concerning a government crackdown on opioid prescriptions, failure to reference plaintiff's medical chart, disagreement whether plaintiff's stenosis was severe, comment that only cancer patients are prescribed morphine, and reductions of plaintiff's MS Contin dosage do not evidence that Dr. Zamilus subjectively knew of, and chose to disregard, a substantial risk of serious harm to plaintiff's health. Rather, the record shows Drs. Zamilus and Avanzato assessed MS Contin's risks and determined lowering plaintiff's dosage was prudent. Plaintiff thus fails as a matter of law to satisfy the subjective component of an Eighth Amendment deliberate indifference claim.

## CONCLUSION

The motion for summary judgment is GRANTED.

The Clerk is instructed to terminate the motion. (Doc. #44).

The Clerk is further instructed to mail a copy of this Opinion and Order to plaintiff at the address on the docket, and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v United States, 369 U.S. 438, 444–45 (1962).

Dated: November 26, 2018
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

11